UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────────

CHANTAL JEANGILLES VOLTAIRE,

                                        Plaintiff,


                - against -                                          No. 11-CV-8876 (CS)

                                                                    **OPINION & ORDER**

WESTCHESTER COUNTY DEPARTMENT OF
SOCIAL SERVICES and OSSINING HIGH SCHOOL,

                                        Defendants.


─────────────────────────────────────────────


<u>Appearances</u>:

Chantal Jeangilles Voltaire
Ossining, New York
*Plaintiff Pro Se*

Fay A. Jones
Westchester County Attorney's Office
White Plains, New York
*Counsel for Defendant Westchester County Department of Social Services*

Lewis R. Silverman
Silverman & Associates
White Plains, New York
*Counsel for Defendant Ossining High School*

<u>Seibel, J.</u>

        Before the Court are Defendants' Motions to Dismiss Plaintiff's Complaint, (Docs. 75,

84), for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1),

failure to state a claim pursuant to Rule 12(b)(6) and failure to comply with pleading

requirements pursuant to Rule 8(a)(2).[1]  For the reasons stated below, Defendants' motions are GRANTED as to the federal claims, and I decline to exercise supplemental jurisdiction over the state law claims.

## I.   Background

### A.   Facts

Plaintiff Chantal Jeangilles Voltaire is the mother of children who were students at Defendant Ossining High School ("Ossining").[2]  (*See* Fourth Amended Complaint ("FAC"), (Doc. 71), at 3.)  Plaintiff alleges that Ossining failed to place her children into foster care, as she had requested and as an employee of Ossining had promised, and that as a result her children were left home alone for a period of days with insufficient food, security and adult supervision. (*See id.*)  An attachment to the FAC further alleges that Vincent Agnano, a supervisor with Westchester County Child Protective Services, failed to intervene after Ossining did not place Plaintiff's children in foster care.  (*See id.* at 7.)  Plaintiff also alleges that Defendant Westchester County[3] subsequently accused her of abandoning and neglecting her children.  (*See id.* at 3.)  The FAC also states that Robert Byrnes, a Westchester County case worker, was violent toward Plaintiff and physically harmed her, and that accordingly the County Department of Social Services ("DSS") and Police Department breached their duty to maintain a secure and safe environment.  (*See id.* at 8.)  The FAC states that these events occurred sometime between

---

[1] Defendant Westchester County Department of Social Services ("Westchester County") filed its reply memorandum of law on April 20, 2016, (Doc. 95), in accordance with the briefing schedule ordered by the Court, (Doc. 82), yet submitted an amended reply brief on April 22, 2016, (Doc. 97), that was substantively different, without having sought or obtained permission.  I disregard this unexplained submission.

[2] Plaintiff incorrectly named as a party "Ossining High School" when in fact Plaintiff should have named the Ossining Union Free School District.  (*See* Memorandum of Law in Support of Defendant Ossining High School's Motion to Dismiss ("Ossining Mem."), (Doc. 80), 1.)  The error is immaterial given my disposition below.

[3] Plaintiff incorrectly named as a party "Westchester County Department of Social Services" when in fact Plaintiff should have named the County of Westchester.  (*See* Memorandum of Law in Support of County Defendants Motion to Dismiss ("Westchester Mem."), (Doc. 86), 1.)  The error is immaterial given my disposition below.

2004 and 2007.  (*See id.* at 3.)  Plaintiff's parental rights were eventually terminated in spring

2008, although it is not clear when this officially occurred.  According to an order issued by the

Family Court of the State of New York, this termination occurred on March 3, 2008, (*see*

Declaration of Fay Angela Jones in Support of Motion to Dismiss ("Jones Decl."), (Doc. 87), Ex.

A, at 1), but on appeal the Appellate Division of the New York Supreme Court indicated that the

Family Court had issued "two orders of fact-finding and disposition dated April 9, 2008"

terminating Plaintiff's parental rights, (*see id.* Ex. B, at 1).[4]

     B.  Procedural History

     On December 2, 2011, Plaintiff filed her initial complaint, (Doc. 2), which then-Chief

Judge Loretta A. Preska dismissed for lack of subject matter jurisdiction, (*see* Doc. 4).  The

Second Circuit on appeal vacated the judgment and remanded the case for further proceedings.

(*See* Doc. 7.)  Plaintiff filed an amended complaint on August 8, 2012, (Doc. 19), and a second

amended complaint on October 10, 2014, (Doc. 25).  The case was then transferred from Judge

Thomas P. Griesa to me.  On January 13, 2015, I dismissed Plaintiff's claims against the Family

Court of the State of New York, the Supreme Court of the State of New York, Appellate

Division, Second Judicial Department, and Kevin Mahon, former Commissioner of DSS, leaving

only Plaintiff's claims against Westchester County.  (*See* Doc. 26.)  Plaintiff filed a third

amended complaint on February 27, 2015, (Doc. 27), which for the first time alleged claims

against Ossining in addition to those against Westchester County, and the FAC on February 4,

2016, (Doc. 71).[5]  Although it is not entirely clear, Plaintiff appears to be bringing claims under

---

[4] I may consider public records in deciding a motion to dismiss.  *See Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

[5] Prior to filing the FAC, Plaintiff submitted several letters requesting to amend the caption to include Vincent Agnano and Robert Byrnes as new defendants, (*see* Docs. 60, 61, 63, 66); one was received well past the deadline for Plaintiff to file the FAC, (Doc. 66).  Ossining opposed Plaintiff's request.  (*See* Doc. 62.)  I initially denied Plaintiff's request because I could not discern on what basis she believed she could amend the caption to include

3

42 U.S.C. § 1983 alleging violations of her right against unreasonable seizure under the Fourth

Amendment and her right to due process under the Fourteenth Amendment.  Plaintiff also

appears to seek vacatur of the state court judgment terminating her parental rights, (*see, e.g.*,

Doc. 2, at 7; Doc. 15, at 1; Doc. 19, at 9, 15), although she does not assert a desire for such relief

in each document she has filed.  On February 19, 2016, Defendant Ossining moved to dismiss all

claims, (Doc. 75), as did Defendant Westchester County on March 4, 2016, (Doc. 84).

## II.    <u>Legal Standards</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks

omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure

from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

---

new defendants, or what claims she believed she might have against them, and because Plaintiff had not filed the
FAC by the Court-ordered deadline.  (*See* Doc. 67.)  Nonetheless, because Plaintiff is proceeding *pro se*, I ultimately
excused her lateness and accepted the FAC, which when filed included Agnano and Byrnes as defendants, as well as
a "Ms. Bohannon," (*see* FAC at 1), who apparently is Agnano's supervisor but who Plaintiff never identified in any
of her previous letters requesting to amend the caption.  In any event, as Westchester County notes in its
memorandum of law, (*see* Westchester Mem. 1 n.1), Plaintiff has not served any of the three new defendants named
in the FAC, and therefore Plaintiff's claims against them are dismissed under Fed. R. Civ. P. 4(m), as well as for the
reasons stated below.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) based on lack of jurisdiction allows a court to consider evidence and materials outside of the pleadings. *See LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999); *Liberty Cable Co. v. City of N.Y.*, 893 F. Supp. 191, 199 n.11 (S.D.N.Y.) (collecting cases), *aff'd*, 60 F.3d 961 (2d Cir. 1995). A motion to dismiss based on a statute of limitations defense, however, is properly considered under Federal Rule of Civil Procedure 12(b)(6), rather than under Rule 12(b)(1), *see Frederick v. Jetblue Airways Corp.*, No. 14-CV-7238, 2016 WL 1306535, at *4 (E.D.N.Y. Mar. 31, 2016),[6] which entitles the court to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

---

[6] The Court will send Plaintiff copies of all unpublished decisions cited in this opinion.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted).

Although her intent is not clear, Plaintiff in the FAC refers to allegations attached to that complaint as well as "all the previous documents," (*see* FAC at 1), a statement which Defendants construe liberally, (*see* Ossining Mem. 1-2; Westchester Mem. 4), as incorporating by reference claims Plaintiff made in previously filed complaints, (*see* Docs. 1, 19, 25, 27, 71), or in her letters to this Court, (*see, e.g.*, Docs. 43, 44, 50, 56).  It is well established that a district court may rely on matters of public record, including prior filings in an action, in deciding motions to dismiss under either Rule 12(b)(6) or 12(b)(1), *see Burfeindt v. Postupack*, 509 F. App'x 65, 67 (2d Cir. 2013) (summary order), although ordinarily an amended complaint "supersedes the original and renders it of no legal effect," *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977).  But because complaints made by *pro se* plaintiffs are to be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (internal quotation marks and emphasis omitted), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (internal quotation marks omitted), a court is permitted to consider factual allegations in *pro se* plaintiffs' preceding complaints in order to supplement those in amended complaints, *see Sommerville v. Wright*, No. 12-CV-165, 2014 WL 794275, at *4 (E.D.N.Y. Feb. 25, 2014).  Accordingly, I will consider (to the extent I can understand them) the claims Plaintiff previously alleged in filings with this Court, including in previously filed complaints as well as in the FAC.  *Cf. Marcel v. United States*, No. 12-CV-4404, 2012 WL 5463926, at *2 (E.D.N.Y. Nov. 8, 2012) (taking judicial notice of facts

contained in *pro se* plaintiff's earlier actions in order to obtain "fuller picture" of plaintiff's claims, and "exercis[ing] extraordinary caution in review[ing]" plaintiff's submissions).

## III.   Federal Claims

### A.   Statute of Limitations

#### 1.   Ossining High School

The FAC, (Doc. 71), does not appear to allege any federal law claims against Ossining, nor do Plaintiff's previously filed letters with this Court, (*see* Docs. 43, 50, 56). Ossining in its memorandum of law suggests that certain allegations made in the third amended complaint, (*see* Doc. 27), and in Plaintiff's letters, (*see* Docs. 50, 56), might be construed to constitute federal causes of action brought against it, (*see* Ossining Mem. 6-7). Plaintiff's submissions conceivably might be construed to allege a violation of the Due Process Clause of the Fourteenth Amendment, with respect to a wrongful deprivation of her parental rights, or a violation of her Fourth Amendment right against unreasonable seizure, based on the alleged assault by the DSS case worker. But such claims would implicate Westchester County's conduct, not Ossining, and therefore Plaintiff has not plausibly alleged federal claims against Ossining.

In any event, even if Plaintiff had articulated federal claims, Ossining argues that any such claims would be time-barred. (*See id.* at 7.) "The statute of limitations is an affirmative defense on which the defendant bears the burden of proof," *Voiceone Commc'ns, LLC v. Google Inc.*, No. 12-CV-9433, 2014 WL 10936546, at *7 (S.D.N.Y. Mar. 31, 2014) (internal quotation marks omitted), although "a motion to dismiss may be granted if a complaint's allegations affirmatively establish an action's untimeliness," *Slainte Invs. Ltd. P'ship v. Jeffrey*, 142 F. Supp. 3d 239, 253 (D. Conn. 2015). To the extent Plaintiff alleges violations by Ossining under 42 U.S.C. § 1983, such actions are governed by New York's three-year statute of limitations. *See*

*Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 328 (2d Cir. 2011) (summary order).  As

Ossining notes, (*see* Ossining Mem. 7), the same three-year statute of limitations would apply to

a claim brought under the Individuals with Disabilities Education Act, which Plaintiff never

mentions but which Ossining suggests could, construed liberally, flow from Plaintiff's reference

in a letter to an "educational accommodation" claim, (*see* Doc. 50, at 3).  Insofar as Plaintiff's

stray references in the third amended complaint to insufficient "consumer protection" or "willful

intent to injure" could constitute federal violations, (*see* Doc. 27, at 4),[7] Ossining notes that such

claims would be governed by a four-year statute of limitations pursuant to 28 U.S.C. § 1658, (*see*

Ossining Mem. 7).

It is clear that any possible federal claim by Plaintiff against Ossining would be based on

events that occurred well outside the relevant statutes of limitations.  The FAC states that the

allegations in the complaint occurred sometime between 2004 and 2007.  (*See* FAC at 3.)

Plaintiff's third amended complaint appears to allege that the events giving rise to her federal

claims against Ossining occurred in June 2006, when an Ossining employee failed to secure

foster care for Plaintiff's children, (*see* Doc. 27, at 3), and in fact the documents Plaintiff

attached to that complaint suggest that the relevant events may have even occurred in 2005, (*see*

*id.* Ex. 1, at 3).  Plaintiff did not name Ossining as a defendant until the third amended

complaint, which was filed February 27, 2015, and accordingly Plaintiff's federal claims against

Ossining are plainly time-barred.

---

[7] Plaintiff has not clearly identified which statutes give rise to these claims.  She briefly alleges a "violation of consumer protection" in complaints preceding the FAC, (*see* Doc. 19, at 12; Doc. 27, at 4), but there, too, fails to clarify what cause of action she is pursuing.  Defendant suggests that perhaps her consumer protection claim is brought pursuant to the Consumer Credit Protection Act, 15 U.S.C. § 1601, and that her willful intent to injure claim arises in the context of workman's compensation or bankruptcy laws.  (*See* Ossining Mem. 7.)  In any event, neither claim is plausibly alleged.

2.  <u>Westchester County</u>

As noted above, Plaintiff's submissions, taken liberally, might be construed to allege violations of the Fourth and Fourteenth Amendments based on purported conduct by agents of Westchester County.  But while Westchester County does not argue in its memorandum of law that Plaintiff's federal claims against it are similarly time-barred, they, too, are untimely.[8]  As noted, violations of 42 U.S.C. § 1983 are governed by a three-year statute of limitations.  *See Lawson*, 446 F. App'x at 328.  The FAC and third amended complaint together indicate that the relevant events giving rise to claims against Westchester County occurred between 2004 and August 2007, (*see* FAC at 3; Doc. 27, at 3),[9] and the family court proceedings that terminated Plaintiff's parental rights took place, at the latest, in April 2008, (*see* Jones Decl. Ex. A, at 1; *id.* Ex. B, at 1).[10]  Plaintiff commenced the instant action against Westchester County on December 2, 2011, (Doc. 2), which is more than three years after spring 2008.  Accordingly, Plaintiff's federal claims against Westchester County are also time-barred.  To the extent Plaintiff means to

---

[8] Although the statute of limitations is an affirmative defense on which defendants generally bear the burden of proof, I may dismiss a complaint *sua sponte*, "after notice to the plaintiff and an opportunity to be heard, where an affirmative defense is readily apparent, or unambiguously established in the record."  *Andersen v. Young & Rubicam Advert.*, No. 11-CV-4466, 2011 WL 10644197, at *2 (S.D.N.Y. Oct. 14, 2011) (internal quotation marks omitted), *aff'd*, 487 F. App'x 675 (2d Cir. 2012) (summary order); *see Klein v. City of N.Y.*, No. 10-CV-9568, 2011 WL 5248169, at *8 (S.D.N.Y. Oct. 28, 2011) (district court may dismiss action *sua sponte* on statute of limitations grounds where "facts supporting the statute of limitations defense are set forth in the papers plaintiff [herself] submitted" and "plaintiff is given notice and an opportunity to be heard") (internal quotation marks omitted), *report and recommendation adopted*, 2012 WL 546786 (S.D.N.Y. Feb. 21, 2012).  As discussed below, Plaintiff was advised by this Court at two pre-motion conferences, as well as by pre-motion letters that both Defendants submitted, that her allegations on their face appeared untimely.  Accordingly, I may dismiss claims against Westchester County on statute of limitations grounds even though Defendant did not argue this point in its briefs.

[9] Even if Plaintiff had successfully served the new defendants she attempted to add in the FAC, *see* note 5 above, those claims would have been dismissed on timeliness grounds because Plaintiff has not plausibly alleged involvement by Agnano, Byrnes, or Bohannon after August 2007.

[10] As noted earlier, Plaintiff's parental rights appear to have been terminated sometime in either March or April 2008, contrary to Plaintiff's assertion at the December 22, 2015 conference that the termination occurred in April 2009.  It is likely that Plaintiff was misremembering the correct date, given that her own submissions previously filed in this action acknowledge termination orders issued in April 2008.  (*See* Doc. 2, at 4; Doc. 15, at 1.)  Whether the termination occurred in March or April 2008 does not affect the untimeliness of Plaintiff's claim because Plaintiff did not file her complaint until December 2011.

assert a claim against the County for its defense of the 2008 ruling in the face of Plaintiff's

subsequent challenges to it, such a claim might be timely but is substantively without merit, as

discussed in Part III.B below.

### 3. Equitable Tolling

Where a plaintiff's claims are time-barred on the face of her own complaint, she bears the

burden of pleading facts sufficient to establish that the statute of limitations should be tolled. *See*

*Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995); *Voiceone Commc'ns*, 2014 WL

10936546, at *7. As noted, although *pro se* complaints "are held to less stringent standards than

formal pleadings drafted by lawyers," *Hughes*, 449 U.S. at 9 (internal quotation marks omitted),

*pro se* litigants must still show some sufficient basis justifying the applicability of equitable

tolling, *see Ackerman v. Ackerman*, 549 F. App'x 45, 46 (2d Cir. 2014) (summary order)

(affirming dismissal where pleadings made clear *pro se* plaintiff knew of and could have brought

action before statute of limitations expired); *Johnson v. Teague*, No. 12-CV-1223, 2014 WL

2515214, at *3 (D. Conn. June 4, 2014) (claim of *pro se* plaintiff dismissed where plaintiff did

not "show[] extraordinary circumstances to warrant equitable tolling of the limitations"); *Fairley*

*v. Collins*, No. 09-CV-6894, 2011 WL 1002422, at *6 (S.D.N.Y. Mar. 15, 2011) (*pro se* plaintiff

argued that he was not provided documents on timely basis, but equitable tolling inapplicable

because documents did not affect when plaintiff knew or had reason to know of injuries that

provided basis for claim); *cf. Bisson v. Martin Luther King Jr. Health Clinic*, No. 07-CV-5416,

2008 WL 4951045, at *1 (2d Cir. Nov. 20, 2008) (summary order) (tolling warranted where *pro*

*se* litigant argued that defendants' "negligence and fraud" plausibly may have prevented plaintiff

from filing timely action, in part because *pro se* litigants need not be "more specific" about why

equitable tolling should apply in order to avoid dismissal pursuant to Rule 12(b)(6)).

As Ossining notes in its reply memorandum of law, (*see* Ossining Reply Mem. 1),[11] Plaintiff has not provided any reason why the applicable statutes of limitations should be tolled or why her federal claims against Ossining are otherwise timely.  I discussed these issues with Plaintiff at two pre-motion conferences, at which my law clerk took detailed notes.  At the November 18, 2015 conference – before which Ossining had submitted a pre-motion letter articulating its belief that Plaintiff's claims are untimely – I told Plaintiff that none of her federal claims appeared timely because it appeared from her allegations that the relevant events occurred in 2006 and Plaintiff did not name Ossining as a party until several years after the longest available statute of limitations expired.  I further explained to Plaintiff that upon amending her complaint she would need to identify a claim with a nine-year statute of limitations (and I indicated that I was not aware of any) or, alternatively, put forth a theory as to why she should be allowed to bring those claims now.  I made clear that she should focus on the timeliness of her alleged claims, but she has failed to do so.

Nor has Plaintiff established that her federal claims against Westchester County should be tolled.  At the December 22, 2015 conference – by which time Westchester County had, too, filed a pre-motion letter arguing that Plaintiff's claims are untimely – I told Plaintiff that the longest statute of limitations governing claims against Westchester County is three years and noted that Plaintiff brought her claims more than four years after the incident.  I reiterated to Plaintiff that she would need to provide a plausible basis for extending the statute of limitations. Plaintiff responded that when the matter first arose, she did not file the case because she was working with Defendants in an effort to resolve the issue.  But attempts to settle do not toll the

---

[11] "Ossining Reply Mem." refers to Reply Memorandum of Law in Further Support of Defendant Ossining's Motion to Dismiss.  (Doc. 92.)

statute of limitations.  *See Bevona v. Serv. Emps. Int'l Union*, No. 05-CV-1157, 2007 WL
1378425, at *11 (S.D.N.Y. May 10, 2007).  Plaintiff further conceded that after her parental
rights were terminated, she waited years before filing the instant action.

Because any conceivable federal claims by Plaintiff against Defendants fall outside the
applicable statutes of limitations, and because she has not alleged any facts or shown any basis to
suggest that equitable tolling is appropriate, Plaintiff's federal claims are time-barred and
dismissed.

B.  <u>Municipal Liability</u>

Even if Plaintiff's claim alleging excessive force based on a purported assault by a
Westchester County case worker were timely, she has not plausibly alleged a claim of municipal
liability under 42 U.S.C. § 1983.  A plaintiff can bring such claims against a municipality only
where either (1) "the action that is alleged to be unconstitutional implements or executes a policy
statement, ordinance, regulation, or decision officially adopted and promulgated by that body's
officers"; or (2) the practice of state officials that is alleged to be unconstitutional is so
permanent and well settled that it "constitute[s] a custom or usage with the force of law."  *Monell
v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978) (internal quotation marks omitted).  Plaintiff
appears to assert that Westchester County can be held liable on the basis of *respondeat superior*,
(*see, e.g.*, Doc. 43, at 2; Doc. 56, at 2), but municipalities cannot be held liable for constitutional
violations of their employees "by application of the doctrine of respondeat superior," *Pembaur v.
City of Cincinnati*, 475 U.S. 469, 478 (1986); *accord Bd. of Cty. Comm'rs v. Brown*, 520 U.S.
397, 405 (1997) (holding that a municipality may not be found liable simply because one of its

employees committed a constitutional tort).[12]  Plaintiff has not come close to plausibly alleging

the existence of a municipal custom or practice promoting or facilitating conduct of the kind

alleged here.

Plaintiff's filings, construed liberally, could also be read as challenging Westchester

County's conduct subsequent to the termination of her parental rights in spring 2008.  To the

extent she is arguing that Defendant wrongfully opposed her efforts to vacate that termination,[13]

Plaintiff's appeals persisted over the next few years, which would bring Defendant's conduct

within the three-year statute of limitations for claims pursuant to § 1983.  For example, on

October 1, 2012,[14] Plaintiff filed a petition with the Family Court of the State of New York

seeking to restore her parental rights, which the court dismissed on October 18, 2012.  (*See* Jones

Decl. Ex. A.)  This order was upheld on appeal by the Appellate Division of the New York

Supreme Court on December 17, 2014.  (*See id.* Ex. B.)  Presumably County employees were

involved in opposing Plaintiff's challenges to the 2008 order, but – apart from failing to specify

what those employees did wrong, *see* Parts III.C.1 and 2 below – Plaintiff has provided no facts

that would allow me to plausibly infer that they acted pursuant to a municipal custom or practice

permitting the violation of Plaintiff's constitutional rights.  Accordingly, the claim is dismissed.

C.  Due Process

Even if Plaintiff had brought a claim against individual defendants relating to

Westchester County's defense of the prior termination of her parental rights – presumably for

---

[12] The County might be liable under a *respondeat superior* theory for state-law torts of its employees, if they were timely pursued.

[13] Plaintiff in the first amended complaint alleges wrongdoing by Westchester County in the initial termination proceeding, (*see* Doc. 19, at 3-4), but, as discussed above, any such conduct falls outside the relevant statute of limitations.

[14] A subsequent decision by the Appellate Division of the New York Supreme Court states that Plaintiff filed her petition in October 2011, rather than October 2012.  (*See* Jones Decl. Ex. B.)

violation of procedural and substantive due process rights guaranteed by the Fourteenth

Amendment, (*see* Doc. 19, at 2, 5-6); *see Park v. City of N.Y.*, No. 99-CV-2981, 2003 WL

133232, at *12 (S.D.N.Y. Jan. 16, 2003) ("Although it is not entirely clear whether the Plaintiffs

intend to assert a procedural due process claim, the complaint repeatedly invokes the language of

due process, and the Court will consider such a claim.") – such claims would have to be

dismissed.

> 1. Procedural Due Process

"In reviewing procedural due process claims, courts must first determine whether a

person has been deprived of a protected liberty interest.  The court must then determine what, if

any, constitutional process is due."  *Hollenbeck v. Boivert*, 330 F. Supp. 2d 324, 332 (S.D.N.Y.

2004).  Because parents have a "constitutionally protected liberty interest in the care, custody

and management of their children," *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999), as

a general rule parents must be afforded due process before being deprived of this interest, *see*

*Nicholson v. Scoppetta*, 344 F.3d 154, 171 (2d Cir. 2003).  In the child removal context, due

process ordinarily constitutes a court proceeding resulting in an order permitting removal.  *See*

*id.*  Plaintiff's allegations make clear that she participated in the termination proceedings, (*see*

Doc. 15) – which included the necessary "fact-finding" hearings, (*see* Jones Decl. Ex. B, at 1;

*Marcel*, 2012 WL 5463926, at *3 (fact-finding hearings a critical component of New York

permanent removal proceedings)) – as well as in subsequent appeals, (*see* Jones Decl. Exs. A,

B), and she has not suggested that any of these hearings were not conducted "at a meaningful

time and in a meaningful manner," *Villanueva v. City of N.Y.*, No. 08-CV-8793, 2010 WL

1654162, at *7 (S.D.N.Y. Apr. 14, 2010) (internal quotation marks omitted).  Indeed, the

termination of Plaintiff's parental rights was reviewed on appeal in state court not once, but

twice.  (*See* Jones Decl. Exs. A, B.)  It is evident that Plaintiff received the process she was

owed.  *See Stein v. City of N.Y.*, 24 F. App'x 68, 69 (2d Cir. 2001) (summary order) (*pro se*

plaintiff argued that defendants did not provide him with prompt post-deprivation hearing, but

due process claim failed because plaintiff was party to and participated in family court

proceedings resulting in order placing children with Commissioner of Social Services); *Marcel*,

2012 WL 5463926, at *3 (plaintiff received due process where he participated in proceedings

involving termination of parental rights and was free to appeal that decision in state court);

*Hollenbeck*, 330 F. Supp. 2d at 332 (plaintiff must plausibly allege children were removed

without court authorization in order to state procedural due process claim).

    Accordingly, Plaintiff has not plausibly alleged a procedural due process claim, and any

such claim is dismissed.

### 2. Substantive Due Process

    Nor has Plaintiff plausibly alleged a substantive due process claim.  As a general

principle, family members have a substantive due process right to remain together without the

state's "coercive interference."  *Anthony v. City of N.Y.*, 339 F.3d 129, 142 (2d Cir. 2003)

(internal quotation marks omitted).  In order to make out a violation of this right, a plaintiff must

plausibly allege that a state decision or action violated its fundamental right and that "no

overridingly important state interest justifie[d] that infringement."  *Marcel*, 2012 WL 5463926,

at *4 (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  In particular, she must plausibly

allege that her separation from her children was "so shocking, arbitrary, and egregious that the

Due Process Clause would not countenance it even were it accompanied by full procedural

protection."  *Anthony*, 339 F.3d at 143 (internal quotation marks omitted); *see Cox v. Warwick

Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) ("Only the most egregious official

conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional.")
(internal quotation marks omitted).

Plaintiff has failed to do so.  Putting aside the untimeliness of any claims related to the
initial termination, Plaintiff freely admits that after an employee of Ossining purportedly agreed
to place her children in foster care, she left Ossining for "many days" without ensuring that her
children were actually safe, (*see, e.g.*, Doc. 25, at 3), suggesting that the state's decision to
pursue the termination of her parental rights was hardly shocking, arbitrary or egregious.
Further, Plaintiff has not plausibly alleged that the subsequent decisions rendered by the Family
Court of the State of New York or the Appellate Division of the New York Supreme Court were
anything but "deliberate and considered."  *See Marcel*, 2012 WL 5463926, at *4.  Indeed, both
courts noted that they lacked authority to overturn the termination because, in part, one of
Plaintiff's children had since been adopted and the other was over twenty-one years old.  (*See*
Jones Decl. Ex. A, at 1-2; *id.* Ex. B, at 2.)  Finally, at no point does she plausibly allege
wrongdoing by any County employee involved in defending the prior termination of Plaintiff's
parental rights – let alone shocking, arbitrary or egregious behavior – nor does she allege that
any such employee was aware of any violation of Plaintiff's rights during this time.
Accordingly, Plaintiff has not plausibly alleged a substantive due process claim, and the claim is
dismissed.[15]

---

[15] As noted, I have liberally construed Plaintiff's filings to support any federal causes of action that plausibly could
be alleged.  Isolated references to the Sherman Act, (*see, e.g.*, Doc. 27, at 4), patent infringement, (*see, e.g.*, *id.* at 2),
and the First Amendment, (*see, e.g.*, *id.* at 4), as well as stray mentions of claims of consumer protection or willful
intent to injure, as discussed earlier, fail to plausibly allege any causes of action.  The same holds true for Plaintiff's
reference to equal protection.  (*See, e.g.*, *id.*)  To the extent she is attempting to argue that the termination of her
parental rights violated the Equal Protection Clause of the Fourteenth Amendment, she would need to plausibly
allege that Defendants in removal proceedings discriminated against her on the basis of a protected characteristic,
*see Porter v. City of N.Y.*, No. 03-CV-6463, 2007 WL 1791149, at *6 (E.D.N.Y. June 19, 2007), but she has not
suggested – nor supplied facts plausibly supporting – that this was the case.

3.  *Rooker-Feldman* Doctrine

Finally, even if a due process claim arising out of the termination of Plaintiff's parental

rights were not untimely, and even if it were plausibly alleged, such a claim is barred by the

*Rooker-Feldman* doctrine.[16]  *See generally D.C. Court of Appeals v. Feldman*, 460 U.S. 462

(1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923).  This doctrine recognizes that "federal

district courts lack jurisdiction over suits that are, in substance, appeals from state-court

judgments."  *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005).

"Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C.

§ 1257, that within the federal judicial system, only the Supreme Court may review state-court

decisions."  *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (internal quotation marks

omitted).  This carve-out of the district courts' subject matter jurisdiction "is confined to cases of

the kind from which the doctrine acquired its name:  cases brought by state-court losers

complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments."

*Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005).

The Second Circuit has identified four requirements that must be met for *Rooker-*

*Feldman* to divest a district court of subject matter jurisdiction:

> First, the federal-court plaintiff must have lost in state court.  Second, the plaintiff
> must complain of injuries caused by a state-court judgment.  Third, the plaintiff
> must invite district court review and rejection of that judgment.  Fourth, the state-
> court judgment must have been rendered before the district court proceedings
> commenced . . . .

---

[16] Westchester County does not argue that the *Rooker-Feldman* doctrine applies to this case and moves to dismiss on other grounds.  Because *Rooker-Feldman* implicates a court's subject matter jurisdiction, however, I may address the doctrine's applicability *sua sponte*.  *See Morris v. Sheldon J. Rosen, P.C.*, No. 11-CV-3556, 2012 WL 2564405, at *3 (E.D.N.Y. July 2, 2012) (collecting cases), *aff'd sub nom. Morris v. Rosen*, 577 F. App'x 41 (2d Cir. 2014) (summary order).

*Hoblock*, 422 F.3d at 85 (internal quotation marks, footnote, and alterations omitted).  The first

and fourth requirements are "procedural," while the second and third are "substantive"; the

requirement that the plaintiff "*complain of an injury* caused by a state judgment . . . is the core

requirement from which the others derive."  *Id.* at 85, 87 (emphasis in original).  If all four

requirements are met, the case must be dismissed.

   Here all four factors are met.  Plaintiff lost in state court when her parental rights were

terminated, *see Johnson v. Myers*, No. 10-CV-1964, 2014 WL 2744624, at *6 (E.D.N.Y. June

16, 2014) (collecting cases), *vacated on other grounds and remanded sub nom. Myers v.

Patterson*, 819 F.3d 625 (2d Cir. 2016), and in this action complains of that injury by alleging

that the state judgment violated her federal due process rights as a parent, (*see* Doc. 27, at 3-4);

*see also Hoblock*, 422 F.3d at 87 (suggesting factor met where father sues in federal court for

son's return on grounds that state judgment violated his substantive due process rights as

parent)).  Plaintiff seeks vacatur of the order terminating her parental rights, (*see, e.g.*, Doc. 19,

at 9, 15), and/or damages to remedy injury resulting from it, (*see, e.g.*, FAC at 4), and the state

judgment was plainly rendered well before she commenced this action on December 2, 2011.

Indeed, other courts have repeatedly found that the *Rooker-Feldman* doctrine bars the precise

relief Plaintiff seeks in this action.  *See, e.g.*, *Green*, 585 F.3d at 103 (*Rooker-Feldman* would bar

federal action seeking return of plaintiff's child if family court had previously entered final order

permanently removing child from custody); *Phifer v. City of N.Y.*, 289 F.3d 49, 57 (2d Cir. 2002)

(court precluded under *Rooker-Feldman* from reviewing family court's determinations regarding

neglect, as family court decided those issues after providing plaintiff full and fair opportunity to

litigate them, and therefore plaintiff barred from requesting order from district court reversing

custody determination); *Johnson*, 2014 WL 2744624, at *8 (*Rooker-Feldman* precluded *pro se*

plaintiff from challenging and reversing family court's prior neglect and custody orders);

*Congregation Adas Yereim v. City of N.Y.*, 673 F. Supp. 2d 94, 104 (E.D.N.Y. 2009) ("[A]

father's federal court challenge to the termination of his parental rights by a state court order will

run aground on the shoals of *Rooker-Feldman* . . . .").  Accordingly, to the extent Plaintiff seeks

vacatur or rejection of the order terminating her parental rights, such a claim is barred by

*Rooker-Feldman* and dismissed.

 The *Rooker-Feldman* doctrine also bars a district court from reviewing alleged

constitutional claims that are "inextricably intertwined" with decisions made in state judicial

proceedings.  *See People United for Children, Inc. v. City of N.Y.*, 108 F. Supp. 2d 275, 285-86

(S.D.N.Y. 2000).  As a result, merely "presenting in federal court a legal theory not raised in

state court . . . cannot insulate a federal plaintiff's suit from *Rooker-Feldman* if the federal suit

nonetheless complains of injury from a state-court judgment and seeks to have that state-court

judgment reversed."  *Hoblock*, 422 F.3d at 86.  The Second Circuit in *Hoblock* presented the

following example to illustrate when *Rooker-Feldman* bars subject matter jurisdiction, even

where a plaintiff alleges new federal claims not raised in state court:

> Suppose a state court, based purely on state law, terminates a father's parental rights
> and orders the state to take custody of his son.  If the father sues in federal court for
> the return of his son on grounds that the state court judgment violates his federal
> substantive due-process rights as a parent, he is complaining of an injury caused by
> the state judgment and seeking its reversal.  This he may not do, regardless of
> whether he raised any constitutional claims in state court, because only the Supreme
> Court may hear appeals from state-court judgments.

*Id.* at 87.

 Such guidance is particularly instructive here.  Plaintiff alleges that Westchester County

submitted false evidence in opposing her efforts to maintain, and later restore, her parental rights,

(*see, e.g.*, FAC at 3; TAC at 4), but *Rooker-Feldman* bars both Plaintiff's request to vacate the

termination order as well as any due process claims related to Defendant's conduct during or

after the termination proceeding, *see Stein*, 24 F. App'x at 69-70 (*Rooker-Feldman* barred *pro se*

plaintiff from arguing that he was entitled to additional post-deprivation hearing because

argument challenged "the Family Court's handling of the case, and a finding in [plaintiff's] favor

would necessitate some modification or possibly overruling of the orders entered by the Family

Court"); *Johnson*, 2014 WL 2744624, at *8 ("[I]t appears that Plaintiff claims that her procedural

due process rights were violated by virtue of false allegations made . . . in the neglect proceeding

in the Family Court. . . .  Plaintiff's procedural due process claim is traceable directly to the

Family Court orders and . . . improperly invites review and rejection of these orders."); *Kaminski*

*v. Comm'r of Oneida Cty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 105-06 (N.D.N.Y. 2011)

(*pro se* plaintiff alleged that defendant violated her due process rights by submitting "false

evidence, contradicting statements, and perjured declarations" during state court termination

proceedings, but plaintiff's due process claims "invite[d] [court to] reject[]" state court

judgments removing children from custody, and were accordingly precluded); *Bernstein v. N.Y.*,

No. 06-CV-5681, 2007 WL 438169, at *6 (S.D.N.Y. Feb. 9, 2007) (plaintiff who sought

declaratory judgment "that he was denied due process in the course of, and not *as a result of*, the

judicial proceedings that led to the state court judgment" barred by *Rooker-Feldman* because

declaration that plaintiff was denied due process during state court proceedings would

"effectively . . . revers[e] a judgment of the state court") (emphasis in original); *Wu v. LeVine*,

No. 05-CV-1234, 2005 WL 2340722, at *2 (E.D.N.Y. June 7, 2005) (*Rooker-Feldman* applied

even where *pro se* plaintiff alleged state court judgment procured by fraud, because plaintiff's

constitutional and civil rights claims arose from state court proceedings and plaintiff could not

"circumvent the *Rooker-Feldman* doctrine by recasting her claims as a federal civil rights

violation"), *aff'd sub nom.* 314 F. App'x 376 (2d Cir. 2009) (summary order).

Nor can Plaintiff circumvent *Rooker-Feldman* by now arguing she seeks only monetary damages, (*see* FAC at 4), rather than review of the state court's determination, *see Lomnicki v. Cardinal McCloskey Servs.*, No. 04-CV-4548, 2007 WL 2176059, at *5 (S.D.N.Y. July 26, 2007) (although plaintiff argued she was "seeking damages for a Civil Rights violation," rather than review of family court's determination, court dismissed on *Rooker-Feldman* grounds because "[t]he fact that Plaintiff is alleging a new claim – discrimination – does not change the injury about which she complains.  That injury – the removal of the children from her custody – was caused by the Family Court judgment."); *McLean v. City of N.Y.*, No. 04-CV-8353, 2007 WL 415138, at *4 (S.D.N.Y. Feb. 6, 2007) ("[B]y seeking damages for violations of their parental rights, plaintiffs are in effect asking this Court to reject the Family Court's findings and reverse its judgment ordering the children's removal from plaintiffs' custody.").

Accordingly, even if Plaintiff had plausibly alleged a due process claim, she is barred by the *Rooker-Feldman* doctrine from pursuing it in in this court.  Any such claims are thereby dismissed.

## IV.    **Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended her complaint four times, (*see* Docs. 19, 25, 27, 71), and on the last occasion did so with the benefit of pre-motion letters from Defendants outlining their proposed grounds for dismissal, (*see* Docs. 32, 48), and my observations during the November 18, 2015 and December 22, 2015 conferences that the third amended complaint was deficient because, among other reasons, its allegations appeared on their face to be untimely.  At the December 22, 2015 conference, I told Plaintiff that the FAC would be her final opportunity to amend.  Plaintiff has not asked to amend again nor suggested that she possesses facts that could cure the deficiencies identified in this opinion.  *See Becnel v. Deutsche Bank, AG*, 507 F. App'x 71, 73 (2d Cir. 2013) (summary order) (affirming denial of leave to amend on grounds of futility because appellants' claims would be time-barred even if amendment allowed); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Pugh-Perry v. N.Y.C. Human Res. Admin.*, 402 F. App'x 588, 589 (2d Cir. 2010) (summary order) (affirming denial of leave to amend because *pro se* plaintiff's complaint time-barred and additional allegations would not cure defect); *Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) (summary order) (denial of leave to amend proper where district court afforded *pro se* plaintiff one opportunity to amend complaint and plaintiff made no specific showing as to how he would cure defects if given second opportunity to amend); *Moore v. City of N.Y.*, No. 15-CV-4578, 2016 WL 3963120, at *10 n.7 (S.D.N.Y. July 21, 2016) (leave to replead not granted to *pro se* plaintiff due to futility, and in part because at pre-motion conference, court "extensive[ly] discuss[ed]" timeliness of filing with plaintiff); *Rullan v. N.Y.C. Sanitation Dep't*, No. 13-CV-5154, 2014 WL 2011771, at *8 (S.D.N.Y. May 16, 2014) (denying *pro se* plaintiff leave to amend because amended complaint did not provide details court had

ordered and because plaintiff did not seek to file another amended complaint or indicate how

another amended complaint would differ), *aff'd*, 607 F. App'x 86 (2d Cir. 2015) (summary

order); *Baiul v. William Morris Agency, LLC*, No. 13-CV-8683, 2014 WL 1804526, at *13

(S.D.N.Y. May 6, 2014) (denying leave to amend on grounds of futility because second-amended

complaint "fail[ed] to come close to alleging any timely claims"), *aff'd*, 601 F. App'x 58 (2d Cir.

2015) (summary order).  Accordingly, I decline to grant leave to amend *sua sponte*.  *See Gallop*,

642 F.3d at 369 ("[N]o court can be said to have erred in failing to grant a request [to amend the

complaint] that was not made."); *Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison LLP*,

351 F. App'x 472, 474 (2d. Cir. 2009) (summary order) (no abuse of discretion in granting

motion to dismiss without *sua sponte* granting leave to amend).

## V.    <u>State Law Claims</u>

Having determined that Plaintiff has failed to plausibly allege any federal claims, I must

consider whether this Court can or should exercise diversity or supplemental jurisdiction over

Plaintiff's remaining state law causes of action.

Pursuant to 28 U.S.C. § 1332(a)(1), district courts retain jurisdiction over civil actions

where the amount in controversy exceeds $75,000 and the parties are citizens of different states.

Accordingly, "diversity jurisdiction is not . . . available when any plaintiff is a citizen of the

same State as any defendant."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374

(1978).  A person's citizenship for purposes of diversity jurisdiction is her domicile, which is

defined as the state in which she is both present and intends to remain for the indefinite future,

*see Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989), and a person's

residence at the time the lawsuit is commenced is *prima facie* evidence of her domicile, *see Galu*

*v. Attias*, 923 F. Supp. 590, 595 (S.D.N.Y. 1996).  "When analyzing subject matter jurisdiction,

the Court must determine diversity at the time Plaintiff filed his complaint." *Jennison v. Dick's Sporting Goods, Inc.*, No. 11-CV-4906, 2011 WL 6293061, at *2 (S.D.N.Y. Dec. 15, 2011) (citing *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570-71 (2004)); *see Brignoli v. Balch, Hardy & Scheinman, Inc.*, 696 F. Supp. 37, 40 (S.D.N.Y. 1988) ("[W]hat is relevant for purposes of diversity jurisdiction is the party's domicile at [the] time that [a] plaintiff filed [its] amended complaint . . . ."). Once the initial complaint is filed, "a party's change of domicile does not affect the presence or absence of diversity." *Galu*, 923 F. Supp. at 595.

Although Plaintiff in later filed complaints claims to be a citizen of Haiti, (*see* Doc. 19, at 1; Doc. 25, at 2; Doc. 27, at 2; FAC, at 2), her original complaint identifies New York as her state of citizenship and provides a New York address, (*see* Doc. 2, at 2), as do her subsequent complaints, (*see* Doc. 19, at 1; Doc. 25, at 1; Doc. 27, at 1; FAC, at 1). At the December 22, 2015 conference, I questioned Plaintiff as to her physical whereabouts and intent to reside at the time she brought her claims in December 2011. She indicated that in 2011 she was residing in New York as a temporary resident, although she claimed that even at that time she was planning to return to Haiti once she got her children back. Despite Plaintiff's arguments to the contrary, it appears evident that at the time of filing, and even now, Plaintiff's Ossining residence represents her "true fixed home and principal establishment, and to which, whenever [s]he is absent, [s]he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks omitted). By her own account she plans to remain there for the indefinite future and has no concrete plans to live anywhere else. Accordingly, Plaintiff has not alleged facts sufficient to invoke this court's diversity jurisdiction. *See Reed v. Hartford Police Dep't*, No. 03-CV-2147, 2004 WL 813028, at *4 (D. Conn. Apr. 6, 2004) (dismissing *pro se*

plaintiff's § 1983 claims and finding lack of diversity jurisdiction to consider remaining state law claims because both plaintiff and defendants were citizens of Connecticut).

I decline to exercise supplemental jurisdiction over Plaintiff's remaining state law causes of action. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."). The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Accordingly, having determined that all of the claims over which this Court has original jurisdiction should be dismissed, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state law causes of action. *See Johnson v. Ruiz*, No. 11-CV-542, 2012 WL 90159, at *5 (D. Conn. Jan. 10, 2012) (dismissing *pro se* plaintiff's § 1983 claims and declining to exercise supplemental jurisdiction over state law claims where plaintiff failed to allege facts sufficient to invoke court's diversity jurisdiction).

**VI.**   <u>**Conclusion**</u>

For the reasons stated above, Defendants' motions to dismiss are GRANTED. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 75, 84), and close the case.

**SO ORDERED.**

Dated: August 29, 2016
         White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.